IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**MICHAEL CHASE MORRIS,**<br><br>**Defendant.** | **Case No. 15-CR-115-CVE** |

## Response in Opposition to § 2255 Motion (Dkt. # 99)

This Court should deny Morris's § 2255 motion (Dkt. # 99) because all his claims are either time-barred, procedurally barred, or meritless.

## Factual Background

In March 2016, Morris pleaded guilty pursuant to a plea agreement to one count of bank fraud and three counts of making false statements to financial institutions. (Dkt. # 24; PSR ¶¶ 1, 5). Underlying the charges were two schemes: a check kiting scheme and a real estate scheme. (PSR ¶¶ 8, 10). In the check-kiting scheme, Morris opened a series of gas stations and about 30 bank accounts under various names, moving money for the gas station business among the accounts in a circular fashion so that lenders would think the business had more cash on hand than it really did. (*Id.* at ¶¶ 7–8). In the real estate scheme, Morris made false representations to banks to obtain loans to buy, remodel, and resell real estate properties. (*Id.* at ¶ 10).

In the plea agreement, Morris and the government agreed that he owed $1,700,190.11 in restitution. (Dkt. # 24 at 5–7). The parties also agreed that the total loss from the schemes, both actual and intended, was $1,958,583.08. (*Id.* at 15).

At the time of his 2016 sentencing, Morris already had multiple prior convictions for fraud and related offenses and had violated the terms of his supervised release eight times in prior federal cases. (PSR at ¶¶ 30–35). The violations frequently involved conduct like making false statements to banks, applying for and obtaining lines of credit without permission, and making false statements in his monthly reports to Probation. (*Id.*). For these violations, he had received modifications to his supervised release conditions, then sentences of home confinement, then short sentences of incarceration, and then longer sentences of incarceration. (*Id.*).

In June 2016, this Court sentenced Morris to 78 months of imprisonment and five years of supervised release. (Dkt. # 40 at 2). It ordered him to pay $1,641,915.71 in restitution. (*Id.* at 5). As part of supervised release, the Court imposed special financial conditions that required Morris to disclose all bank accounts to Probation and prohibited him from applying for any loan or credit arrangement without first consulting with Probation. (*Id.* at 4).

Morris began serving supervised release in January 2022. (Dkt. # 55 at 1). In February 2023, Probation filed a petition to terminate Morris's supervised release based on conduct that included violating 18 U.S.C. § 1001 by knowingly making false statements to Probation and violating 18 U.S.C. § 1014 by making false

statements to a bank to obtain a loan. (*Id.* at 2). After Morris stipulated to the violations, the Court sentenced Morris to 36 months' imprisonment, with five years of supervised release to follow. (Dkt. # 75 at 1, 2).

Morris's most recent period of supervision began in December 2024. (Dkt. # 84 at 1). In February 2025, Probation filed a petition to terminate Morris's supervised release based on allegations including that he had violated 18 U.S.C. § 1001(a)(1) by making false statements to Probation. (*Id.* at 1–2). As described in the petition, the false statements included knowingly concealing from Probation a checking account, a Cash App account, and a PayPal account. (*Id.* at 1–2). The petition alleged additional violations related to concealing additional accounts and credit arrangements from Probation. (*Id.* at 2).

At a hearing on the petition, the Court described the violations, noting that Violation One alleged that Morris "committed a violation of 18 U.S.C. [§] 1001(a)(1) by concealing" the various accounts. (Dkt. # 106 at 4). Morris stipulated to Violation One, and the government dismissed the petition as to the remaining violations. (Dkt. # 106 at 8–9).

The government recommended a sentence of 56 months' imprisonment for the violation, consisting of 14 months per count of conviction, running consecutively. (Dkt. # 96 at 1). Mr. Hilfiger argued on Morris's behalf for a guideline sentence of 8 to 14 months per count, to run concurrently. (Dkt. # 107 at 6). He argued Morris's mental health issues mitigated his wrongdoing, asserting that Morris's "biggest

problem is his mental health." (Dkt. # 107 at 7). He noted that Morris "has a lot of . . . impulse control, or lack of control, and he's a very impulsive person." (*Id.*). He noted that it can be "hard [for Morris] to stop what he's doing once he ramps up and gets going." (*Id.*). He suggested that Morris receive more mental health treatment, including counseling "almost every day, or multiple times a week." (*Id.*).

Morris addressed the Court directly and provided more detail about his mental health issues. (*Id.* at 8). He reminded the Court about his manic depression and bipolar diagnoses, and he admitted that for many years he was in denial and did not take his medication. (*Id.*).

Before sentencing Morris, the Court observed that Morris's "[p]rior revocations and sentence length, including a prior upward variance in his most recent revocation, have had no deterrent effect," noting how little time Morris spent on supervised release in 2025 before violating again. (*Id.* at 12). It also noted the "significant danger to the public" that Morris continues to pose. (*Id.*). The Court sentenced Morris to 48 months' imprisonment, consisting of 12 months for each of the counts of conviction, all to run consecutively. (*Id.* at 13).

Morris did not appeal the revocation of his supervised release or his sentence.

Now, in his § 2255 petition, Morris asserts that Mr. Hilfiger provided ineffective assistance of counsel in his 2023 and 2025 revocation proceedings. (Dkt. # 99 at 13–14). He also asserts several due process violations, including that Probation should have given him more leeway before drafting a petition to revoke, that the Court

improperly sentenced him based on the retributive sentencing factors, that his special conditions were invalid to begin with, and that his restitution order is excessive. (*Id.* at 15–25). The Court has ordered the government to respond.[1] (Dkt. # 101).

## Argument & Authorities

### I. Morris's ineffective-assistance-of-counsel claims are all either time-barred or fail on the merits.

#### *A. Applicable Standards*

To demonstrate ineffective assistance of counsel, a defendant must show both that his "counsel's performance was deficient" and that the "deficient performance prejudiced" him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient

---

[1] After the Court ordered the government to respond to the petition (Dkt. # 101), Morris filed a motion to modify the conditions of his supervised release (Dkt. # 112) and a supplement to that motion (Dkt. # 115). He also filed an Amended Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Dkt. # 113) and a supplement to that amended motion (Dkt. # 114). He then filed a Notice of Supplemental Authority as to both the § 2255 motion and the motion to modify conditions of supervised release. (Dkt. # 126). The Court has not ordered the government to respond to these latter filings, so the government restricts its response to the arguments made in the petition itself, Dkt. # 99. In any event, Morris's Amended Motion (Dkt. # 113) consists of a repackaging of the arguments from the original petition and a new claim for relief under § 2255, namely that Mr. Hilfiger was ineffective for failing to file an appeal of the revocation sentencing. (*See* Dkt. # 113 at 3). The claim that Mr. Hilfiger failed to file an appeal constitutes a new claim or theory that does not relate back to the original petition and is therefore time-barred. *See United States v. Roe*, 913 F.3d 1285, 1298 (10th Cir. 2019); *United States v. Espinoza-Saenz*, 235 F.3d 501, 505 (10th Cir. 2000). The government will of course respond to the specific allegations in Dkt. ## 112, 113, 114, 115, and 126 if the Court so orders.

performance is demonstrated by showing that counsel performed below the level expected from reasonably competent attorneys in criminal cases. *See Strickland*, 466 U.S. at 687-88. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689. In order to show prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Because Morris "must demonstrate both *Strickland* prongs to establish his claim, a failure to prove either one is dispositive." *United States v. Orange*, 447 F.3d 792, 796-97 (10th Cir. 2006). "The performance component need not be addressed first. 'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.'" *Smith v. Robbins*, 528 U.S. 259, 286 n. 14 (2000) (quoting *Strickland*, 466 U.S. at 697).

### ***B. Morris's claim relating to an alleged improper communication between Mr. Hilfiger and the Court in 2023 is time-barred.***

The Court should dismiss Morris's claim that Mr. Hilfiger rendered ineffective assistance on his 2023 revocation by engaging in an improper ex parte communication with the Court, because this claim is time-barred. In general, a

motion under § 2255 is untimely if filed more than one year after the judgment became final. 28 U.S.C. § 2255(f)(1). The judgment on the 2023 revocation sentencing was entered on April 3, 2023, and became final on April 18, 2023, the first day after expiration of the 14-day direct-appeal period. *See United States v. Prows*, 4448 F.3d 1223, 1227–28 (10th Cir. 2006). Morris filed his § 2255 motion on March 30, 2026, nearly two years after the deadline for challenging the 2023 revocation proceedings had passed.

Morris does not allege any facts that would support a later deadline. Although he alleges that his 2023 supervised release violation had collateral consequences for his 2025 revocation proceedings (Dkt. # 99 at 13), he does not allege that any "government inaction" created an "impediment to making a motion" prior to April 2024. 28 U.S.C. § 2255(f)(2). Nor does he allege that the Supreme Court announced a "new right" relevant to this claim that it made "retroactively applicable to cases on collateral review." *Id.* at § 2255(f)(3). And he does not allege that he was unaware until some later date of "the facts supporting the claim." *Id.* at § 2255(f)(4). In fact, Morris alleges that Mr. Hilfiger told him about the allegedly improper communication before he stipulated to the 2023 violations. (Dkt. # 99 at 6, 41). Thus, the deadline for filing a § 2255 claim was April 18, 2024. Morris's March 2026 claim should be dismissed as time-barred. *See, e.g.*, *United States v. Littlehead*, Case No. 08-CR-116-CVE-3, 2019 WL 2030119, at *2 (N.D. Okla. May 8, 2019) (unpublished) (dismissing as time-barred when defendant failed to show "that his

§ 2255 motion was timely filed under any provision of § 2255(f)").

### C. *Morris was not prejudiced when Mr. Hilfiger declined to challenge the characterization of Violation One as a violation of 18 U.S.C. § 1001.*

Morris fails to establish any deficient performance or prejudice with regard to the characterization of Violation One in 2025 as a new law violation. Although Morris contends that the allegations in the petition failed to establish that his misstatements were material and that he acted with the requisite mens rea for a § 1001 violation, he fails to understand the significance of his stipulation. By stipulating to Violation One without qualification, Morris stipulated not just that he had failed to disclose financial accounts but also that he had *concealed* the accounts from Probation and that this conduct constituted a violation of § 1001(a)(1). (Dkt. # 84 at 1; Dkt. # 107 at 4). Because Morris himself stipulated that he violated § 1001, he fails to show prejudice from Hilfiger's alleged failure to investigate. Notably, Morris does not allege that he would not have stipulated to the Violation but for Hilfiger's inaction. *Cf. Hill v. Lockhart*, 474 U.S. 52, 59 (1985) ("to satisfy the 'prejudice' requirement" in case where defendant pleaded guilty, "defendant must show . . . a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial").

Even if Morris had alleged that he would not have stipulated to the violation but for Hilfiger's errors, this allegation would fail, because the evidence in the Petition would have amply established by a preponderance of the evidence that Morris

knowingly concealed material financial activity from Probation. *See United States v. Manning*, 526 F.3d 611, 621 (10th Cir. 2008) ("Mr. Manning's statement to the probation officer [while preparing the PSR] that omitted mention of his $40,000 401(k) retirement account is a prosecutable offense under 18 U.S.C. § 1001(a) . . . ."). Among the information alleged in the Petition was that Probation discovered multiple accounts that Morris had not disclosed, that Morris repeatedly evaded questioning about the Sunbelt Holdings business checking account, and that some of the accounts were only discovered because Probation searched Morris's house pursuant to the special search and seizure condition. (Dkt. # 84 at 2).

In analyzing the facts alleged in the Petition, the Court was not required to ignore Morris's "pattern of fraudulent offenses committed over a thirty-year period, which has resulted in multimillion-dollar financial losses." (Dkt. # 51 at 3). This pattern included Morris's admitted § 1001 violation from just two years earlier, (Dkt. # 75 at 1), as well as multiple similar § 1001 violations in Morris's past. *See United States v. Morris*, 313 F. App'x 125, 133 (10th Cir. 2009) (rejecting Morris's argument that knowingly concealing numerous lines of credit and a limited liability company from Probation did not constitute a § 1001 violation). The extensive context of this most recent violation would have made it untenable for Morris to contest that his false statements constituted new law violations. *Cf. United States v. Tignor*, 981 F.3d 826, 829–30 (10th Cir. 2020) (rejecting defendant's claim that absent a Rule 11(b)(1)(G) error he would not have pleaded guilty to violating 18 U.S.C. § 922(g)(1), where a

review of the record showed the defendant "lacked a plausible argument" that his firearm possession didn't constitute § 922(g)(1)).

### D. *Morris fails to show that Mr. Hilfiger performed deficiently in making arguments in mitigation of sentencing.*

Contrary to Morris's contention (Dkt. # 99 at 13–14), Mr. Hilfiger specifically argued that the Court should consider Morris's mental health struggles, arguing that Morris has "impulse control" issues and contending that mental health was Morris's "biggest problem." (Dkt. # 107 at 7). Mr. Hilfiger advocated that Morris receive counseling "almost every day, or multiple times a day" to "help with his lack of ability to control his own impulses." (*Id.*). Further, when Morris addressed the Court personally, he also reminded the Court about his mental health issues. (*Id.* at 8–10). And the Court was already knowledgeable about Morris's mental health conditions from its long history with Morris's case. (*See, e.g.*, PSR at ¶ 42). Thus, Morris fails to show that the Court was inadequately informed about his mental health.

Morris contends that Mr. Hilfiger performed deficiently by failing to argue that Probation and the Court should have imposed "graduated sanctions" before seeking termination of his supervised release and sentencing him to 48 months. (Dkt. # 99 at 45). He also faults Mr. Hilfiger for not arguing that his transgressions were merely "technical violations" rather than serious standalone offenses. (*Id.*). Morris fails to show prejudice from any such failures, because Morris *has* received graduated discipline and his most recent transgressions were *not* "technical violations." As this

Court has observed, Morris has violated the terms of his federal supervised release on at least eight prior occasions. (Dkt. # 51 at 3). As the PSR demonstrates and as the 2023 revocation proceedings confirm, Morris has received sanctions for these violations that have steadily increased in severity over time. (PSR ¶¶ 30–35; Dkt. # 75 at 2). As the Court observed in sentencing the most recent violations, all the lesser sanctions Morris received over the years were plainly insufficient to deter him from violating his conditions of release again.

Morris has previously argued that making false reports and concealing lines of credit were "technical violations," and the Tenth Circuit squarely rejected these arguments. *Morris*, 313 F. App'x at 133 ("Morris claims he committed only a technical violation and, therefore, could not be sentenced for new criminal activity for false reporting."). That court observed that, by virtue of his repeated supervised release violation proceedings based on similar violations, Morris knows that concealing new financial accounts from Probation is material. *Id.* ("Morris has extensive experience with the terms of his supervised release. He was repeatedly put on notice that his reports must be correct and complete."). What was true in 2009 is even more true now: Morris cannot claim that he fails to understand why it would be material to Probation and the Court that a serial fraudster continues to conceal the existence of financial accounts.

## II. Morris's various due process claims are procedurally barred.

***a. Morris's claim that the Court applied the retributive sentencing factors is procedurally barred and would fail on the merits in any event.***

Morris claims that the Court relied on the retributive sentencing factors in 18 U.S.C. § 3553(a)(2)(A) when sentencing him, in violation of *Esteras v. United States*, 606 U.S. 185 (2025). (Dkt. # 99 at 18–20). This claim is procedurally barred because Morris did not appeal his revocation sentencing. "Section 2255 motions are not available to test the legality of matters which should have been raised on direct appeal." *United States v. Warner*, 23 F.3d 287, 291 (10th Cir. 1994). "Ordinarily, failure to raise an issue either at trial or on direct appeal imposes a procedural bar to habeas review." *United States v. Barajas-Diaz*, 313 F.3d 1242, 1245 (10th Cir. 2002).

When a petitioner "fails to raise an issue on direct appeal, he is barred from raising the issue in a § 2255 proceeding, unless he establishes either cause excusing the procedural default and prejudice resulting from the error, or a fundamental miscarriage of justice if the claim is not considered." *United States v. Cox*, 83 F.3d 336, 341 (10th Cir. 1996). Morris identifies neither cause nor prejudice to excuse his failure to raise the *Esteras* violation on direct appeal, nor a fundamental miscarriage of justice if the claim is not considered. His claim is therefore barred.

Moreover, Morris's claim would fail on the merits, because the Court did not rely on the § 3553(a)(2)(A) factors, nor did the government advocate that the Court base its sentence on those factors. The Court said that in reaching the sentence it had considered "the subset of [the] Section 3553(a) factors set forth in [Section] 3583(e)."

(Dkt. # 107 at 12). Section 3583(e) specifically omits § 3553(a)(2)(A). The Court justified the sentence by citing the need to deter future violations and the need to protect the public from Morris's crimes. (*Id.* at 12–13). These factors, and not the retributive sentencing factors in § 3553(a)(2)(A), are the same § 3553(a) factors the government referenced in its sentencing memorandum. (Dkt. # 96 at 2–4).

***b. Morris also procedurally defaulted on his challenge to the validity of the special conditions and the restitution, which were both imposed at his 2016 sentencing.***

Like his *Esteras* claim, Morris's facial challenge to the special financial condition (Special Condition Two) and the computer monitoring condition (Special Condition Four) is procedurally barred, as is his challenge to his restitution order. *See Barajas-Dias*, 313 F.3d at 1245.

Special Condition Two was imposed at Morris's 2016 sentencing and reimposed without alteration at his 2023 sentencing. (*Compare* Dkt. # 40 at 4 *with* Dkt. # 75 at 5). Criminal defendants may challenge their sentences under 18 U.S.C. § 3742, and "[s]upervised-release conditions are part of the sentence." *United States v. Sandoval*, 477 F.3d 1204, 1207 (10th Cir. 2007). Indeed, "[t]he typical way to challenge an improper condition of supervised release is by an appeal." *United States v. Nielsen*, 167 F.4th 1079, 1085 (10th Cir. 2022). Morris did not appeal either sentence, and he has not shown cause or prejudice that would excuse his failure. His "challenge to the legality of his original sentence is barred by his failure to timely raise the issue on direct appeal." *United States v. Turner*, 88 F. App'x 307, 311 (10th Cir. 2004). He also

did not appeal the 2025 sentencing, when the Court imposed Special Condition Four, and thus his challenge to this condition is also procedurally barred.

The same reasoning applies to Morris's challenge to the restitution order, which also has been in effect since 2016. (Dkt. # 40 at 5). Although he cites *Ellingburg v. United States*, 604 U.S. 163 (2026), as purportedly providing a new basis for his current challenge, his current challenge is not so "novel that its legal basis [wa]s not reasonably available to counsel" at the time of appeal, such that it would qualify as "cause" to excuse a procedural default. *See Reed v. Ross*, 468 U.S. 1, 16–17 (1984). *Ellingburg* merely recognized that restitution under the MVRA constitutes "punishment" for purposes of the ex post facto clause. Nothing about Morris's current challenge was unavailable to him prior to *Ellingburg*.

***c. Morris's remaining Due Process claims are similarly procedurally barred and meritless.***

Morris also procedurally defaulted on his remaining Due Process claims: that Probation violated its statutory duty of neutrality, that the forms on which he made false statements in 2025 were confusing, that the government committed prosecutorial misconduct by characterizing Violation Number One as a § 1001 offense, and that he was arrested rather than being notified of the petition by summons. (Dkt. # 99 at 46–59). Morris failed to raise any of these claims on direct appeal, and he fails to demonstrate cause or prejudice to excuse the failure.

These assorted due process claims are meritless in any event. As noted above, ample evidence and Morris's own stipulation supported the characterization of the misconduct in Violation One as a § 1001 offense. Also as noted above, Morris has received ample graduated sanctions, and he fails to show that his sentence was substantively unreasonable in light of his history of fraudulent conduct and repeated supervised release violations. *See United States v. Wallace*, 498 F. App'x 803, 806 (10th Cir. 2012) (upholding 63-month sentence on supervised release revocation for serial fraudster whose violations involved "deception and manipulation similar to the conduct in the underlying offenses"); *Morris*, 313 F. App'x at 134 (Morris's "conniving, manipulative and narcissistic behaviors continue unabated, an obvious risk to public safety").

## Conclusion

For the reasons set forth above, this Court should deny Morris's § 2255 motion.

## Compliance with Rule 5

In compliance with Rule 5 of the Rules Governing Section 2255 Proceedings for the United States District Courts, the government states that Morris has not used any other available federal remedies and has not been given an evidentiary hearing in federal court.

Respectfully submitted,

CHRISTOPHER J. NASSAR
United States Attorney

*/s/ Thomas E. Duncombe*
Thomas E. Duncombe, DC Bar # 1029476
Assistant United States Attorney
110 West Seventh Street, Suite 300
Tulsa, Oklahoma 74119-1013
918.382.2700
thomas.duncombe@usdoj.gov

**Certificate of Service**

I certify that on September 4, 2026, I electronically transmitted the foregoing to the Clerk of the Court using the ECF System for filing, and that a true and correct copy of this filing was served by first-class mail, postage prepaid, to the following, who is not an ECF registrant:

Michael Chase Morris
Reg. No. 05990-062
RRM Dallas
344 Marine Forces Dr.
Grand Prairie, TX 75051
*Defendant, Pro se*

*/s/Lori C. Frederick*
Lori C. Frederick
Paralegal Specialist