APY
KN



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

FILED

SEP 18 2026

Bonnie N. Hackler, Acting Clerk
U.S. DISTRICT COURT

UNITED STATES OF AMERICA,
Plaintiff/Respondent,

v.

MICHAEL CHASE MORRIS,
Defendant/Movant.

Case No. 15-CR-0115-001-CVE
Civil No. 4:26-cv-00192-CVE-MTS

**SECOND SUPPLEMENTAL MEMORANDUM IN SUPPORT OF THE AMENDED MOTION UNDER 28 U.S.C. § 2255 (DKT. ## 113, 114): IMPROPER CHARACTERIZATION OF TECHNICAL VIOLATIONS AS FELONY CONDUCT, PROSECUTORIAL LEVERAGE CONTRARY TO DEPARTMENT OF JUSTICE POLICY, AND RESULTING INVOLUNTARY STIPULATION**



X Mail ___No Cert Svc ___No Orig Sign
___C/J ___C/MJ ___C/Ret'd ___No Env
___No Cpy's X No Env/Cpy's ___O/J ___O/MJ

## TABLE OF CONTENTS

**I. PRELIMINARY STATEMENT AND PURPOSE OF THIS SUPPLEMENT....................4**
**II. FACTUAL RECORD: WHAT THE PETITION ACTUALLY ALLEGED......................5**
A. The disclosed documents and the monthly report.................................................................5
B. The forcible arrest and its significance .....................................................................................6
C. The § 1001 threat and the induced stipulation ......................................................................7
**III. THE PETITION ALLEGATIONS WERE NOT SUPPORTED BY LAW OR FACT ...8**
A. The financial condition's text did not require what the petition alleged .............................8
B. Section 1001 does not apply to these facts.............................................................................9
C. USSG § 7B1.1 grade, the statutory maximum, and the disputed Grade B premise............10
**IV. THE PROBATION OFFICE BYPASSED REQUIRED GRADUATED-SANCTIONS PROCEDURES..........................................................................................................................11**
**V. AUSA WHIPPLE'S LEVERAGING OF THE § 1001 THREAT VIOLATED DOJ POLICY AND THE CONSTITUTION.........................................................................13**
A. The Bondi Memorandum and the Justice Manual ..............................................................13
B. The constitutional framework: Bordenkircher and its limits ..............................................14
C. The stipulation was not voluntary ...........................................................................................16
**VI. THE COMPLETE SEQUENCE SHOWS INSTITUTIONAL ANIMUS RATHER THAN LEGITIMATE ENFORCEMENT .......................................................................17**
**VII. APPLICATION TO THE § 2255 GROUNDS ................................................................18**
**VIII. CONCLUSION AND RELIEF REQUESTED.................................................................20**

# TABLE OF AUTHORITIES

**Cases**

*Blackledge v. Perry*, 417 U.S. 21 (1974) .......... 15, 18
*Bordenkircher v. Hayes*, 434 U.S. 357 (1978) .......... 14, 15, 16
*Brady v. United States*, 397 U.S. 742 (1970) .......... 16
*Garza v. Idaho*, 586 U.S. 232 (2019) .......... 19
*Gall v. United States*, 552 U.S. 38 (2007) .......... 20
*Hill v. Lockhart*, 474 U.S. 52 (1985) .......... 19
*Mabry v. Johnson*, 467 U.S. 504 (1984) .......... 16
*Strickland v. Washington*, 466 U.S. 668 (1984) .......... 18, 19
*United States v. Aguayo-Montes*, 169 F.4th 1205 (10th Cir. 2026) .......... 20
*United States v. Bear*, 769 F.3d 1221 (10th Cir. 2014) .......... 12
*United States v. Blair*, 933 F.3d 1271 (10th Cir. 2019) .......... 12
*United States v. Booker*, 63 F.4th 1254 (10th Cir. 2023) .......... 18
*United States v. Bycroft*, 155 F.4th 1177 (10th Cir. 2025) .......... 19, 20
*United States v. Goodwin*, 457 U.S. 368 (1982) .......... 15
*United States v. Manning*, 526 F.3d 611 (10th Cir. 2008) .......... 10
*United States v. Martin*, No. 24-3140 (10th Cir. Sept. 8, 2026) (published) .......... 18, 19, 20
*United States v. Morris*, 313 F. App'x 125 (10th Cir. 2009) .......... 10

**Statutes and Rules**

18 U.S.C. § 1001(a)(1) .......... passim
18 U.S.C. § 1001(b) (judicial-function exception) .......... 9, 10
18 U.S.C. § 3143(a)(1) .......... 17
18 U.S.C. § 3553(a) .......... passim
18 U.S.C. § 3583(d) .......... passim
18 U.S.C. § 3583(e) .......... passim
18 U.S.C. § 3601 .......... 11
18 U.S.C. § 3603(2)–(3) .......... 11, 12
28 U.S.C. § 2255 .......... passim
Fed. R. Crim. P. 32.1(b)(2) .......... 15, 16
Fed. R. Crim. P. 32.1; Fed. R. Crim. P. 32.1(b)(2) .......... passim, 15, 16

**Sentencing Guidelines**

U.S. Sent'g Guidelines Manual § 7B1.1 (U.S. Sent'g Comm'n 2025) ....................10, 11

U.S. Sent'g Guidelines Manual § 7B1.2 (U.S. Sent'g Comm'n 2025) ....................11, 12

U.S. Sent'g Guidelines Manual § 7B1.4 (U.S. Sent'g Comm'n 2025) ....................10

U.S. Sent'g Comm'n, Amendments to the Sentencing Guidelines, Amendment 835 (Apr. 30, 2025) ....................19, 20

**DOJ and AO Policy Materials**

Att'y Gen. Pam Bondi, General Policy Regarding Charging, Plea Negotiations, and Sentencing (Feb. 5, 2025) ....................13, 14, 15, 16

Justice Manual §§ 9-27.220, 9-27.260, 9-27.300, 9-27.320, 9-27.730 ....................13, 14

Administrative Office of the U.S. Courts, Overview of Probation and Supervised Release Conditions (2019) ....................11, 12

Administrative Office of the U.S. Courts, PPSO Technical Violations Study (FY 2021) ....................12

## I. PRELIMINARY STATEMENT AND PURPOSE OF THIS SUPPLEMENT

This Second Supplemental Memorandum addresses a structural defect in the 2025 revocation proceedings that runs through every other ground in the Amended Motion: the probation office, and then the government, converted a reporting irregularity into a felony allegation — and then used that allegation as leverage to prevent Morris from contesting any aspect of the petition. The purpose of this Supplement is to trace that sequence from the petition through the stipulation, to demonstrate that it violated the law, the Department of Justice's own binding policies, and the Administrative Office's framework for responding to technical violations, and to show how that sequence directly caused the prejudice identified in the Amended Motion's Grounds One, Two, and Four.[1]

This Court is asked to do what the revocation hearing itself did not: measure what actually happened in February and March 2025 against the legal standards that governed the government's conduct. When that measurement is made, the record raises substantial questions that an evidentiary hearing must resolve: whether the section 1001 characterization was supported by the elements the statute requires; the felony threat was deployed to suppress a contestation the law permitted; the appointed counsel did nothing to resist it; and the resulting stipulation was not the product of a free and informed decision.

## II. FACTUAL RECORD: WHAT THE PETITION ACTUALLY ALLEGED

### A. The disclosed documents and the monthly report

[1]This Supplement is filed as additional authority and factual argument in connection with grounds already pleaded. Morris does not seek to add new grounds not contained in the Amended Motion (Dkt. # 113). This Supplement develops and supports those grounds with verified legal authority and the record facts it identified.

Morris's most recent term of supervised release began in December 2024 after he was released from BOP custody following his 2023 revocation sentence. (Dkt. # 84, at 1.) Six weeks into the term, on February 5, 2025, Probation Officer McClintock presented Morris with a monthly supervision report on the district's own revised form, bearing the legend "ND/OK (Rev 03/06)" — an instrument expanding on the form authorized by the Administrative Office's national standards. (Dkt. # 77, at 7.)[2]

Morris submitted the report. On it he disclosed that his income source was "Family Help" and that he had an employer listed as "Social Security." (Dkt. # 77, at 7.) He disclosed a Wells Fargo bank account with a balance of $25.90. He completed every field. In the account section, he wrote by hand:

> "ATTACHED SAME — I AM STILL WORKING ON STATUS OF OLD ACCOUNTS WILL UPDATE."

(Dkt. # 77, at 7.) His certification of the report was expressly qualified: "To the best of my knowledge." (*Id.*) Officer McClintock's own notation recorded: "Submitted 2-5-25 as instructed." (Dkt. # 77, at 8.) The Wells Fargo bank statement Morris produced simultaneously showed a transfer from a second account — a former business account, since closed, whose remaining balance had been swept into the personal account. The PayPal and Cash App activity the petition later identified as "concealed" appeared as line items on that same statement. (Dkt. # 113, at 4–6.)

The condition Morris was required to comply with — the financial condition imposed at the 2016 sentencing and reimposed in 2023 — required disclosure of personal accounts and disclosure of business accounts "upon request." (Dkt. # 40, at 4; Dkt. # 75, at 5.) No such request

[2] The district-revised form is probative of the form-expansion argument: it asks for disclosures beyond those the Court ordered in the judgment. A question on an office-drafted form cannot add a disclosure obligation the judgment does not contain. 18 U.S.C. § 3603(3) confines the officer to executing conditions "specified by the court," not to enlarging them.

was made. The PayPal and Cash App platforms the petition characterized as "concealed" are not financial institutions and were not covered by the account-disclosure condition as written. They were opened before supervision began. The monthly report itself noted Morris would update Probation on the status of those pre-supervision accounts. Under any reading of the condition's actual text, Morris disclosed what the condition required and flagged the rest.

**B. The forcible arrest and its significance**

Despite the nature of the allegations — a reporting matter, involving no victim, no financial loss, and no new fraud — the Probation Office did not proceed by summons. Instead, on February 21, 2025, the government obtained a sealed warrant, and Morris was arrested by the United States Marshals Service's Fugitive Task Force. (Dkt. ## 77–78, 81, 83–89.) That arrest came sixteen days after the Bondi Memorandum took effect and directed that all charging decisions, including the decision to seek arrest rather than a summons, be made on an "individualized assessment of all the facts and circumstances of each particular case," with no room for "animosity or careerism." Att'y Gen. Bondi, Charging, Plea Negotiations, and Sentencing Memo, at 1 (Feb. 5, 2025).[3]

The deployment of a fugitive task force to arrest a 64-year-old nonviolent defendant who had self-surrendered to serve his prior sentence on judicial order, who was not a flight risk, and who was not alleged to have committed any act of violence or to pose any threat to any person, is itself probative of the institutional posture the office had adopted. Fed. R. Crim. P. 32.1(a)(1) gives courts discretion to issue a summons rather than a warrant for alleged supervised-release violations. The choice of warrant — and of the Fugitive Task Force — cannot be rationalized as

[3]Attorney General Bondi, General Policy Regarding Charging, Plea Negotiations, and Sentencing, Memorandum for All Department Employees (Feb. 5, 2025) (hereinafter "Bondi Memo"), available at justice.gov/ag/media/1388541/dl. This document was read in full and verified from the official DOJ website.

proportionate to a disclosure dispute whose key fact was already printed on the submitted bank statement.

### C. The § 1001 threat and the induced stipulation

At the revocation hearing held March 6, 2025 (Dkt. # 106), and in the proceedings preceding it, Morris was confronted with Violation One as an allegation that he "committed a violation of 18 U.S.C. § 1001(a)(1) by concealing" financial accounts from Probation. (Dkt. # 106, at 4.) The government made clear, through counsel and through the petition itself, that if Morris contested the characterization he faced the prospect of a new criminal prosecution under § 1001 — a felony carrying up to five years' imprisonment — in addition to the revocation proceedings. (Dkt. ## 113, 114, Declaration of Michael Chase Morris.)

Morris's appointed counsel, Mr. Hilfiger, lodged no objection to that characterization. He told the Court on the record that he had received the government's sentencing memorandum "weren't able to respond to it" because he "just didn't have the time to do it." (Dkt. # 107, at 6.) He said "No, Your Honor" to every objection opportunity, and at each juncture told the Court he knew of no legal reason the sentence could not be imposed as stated. (Dkt. # 107, at 15.) Morris stipulated to Violation One. (Dkt. # 106, at 8–9.) The remaining violations were dismissed. The government then argued for and obtained a sentence of 48 months — 3.4 times the top of the advisory guideline range — on the Grade B premise that Violation One supplied. (Dkt. # 107, at 4–5, 13.)

## III. THE PETITION ALLEGATIONS WERE NOT SUPPORTED BY LAW OR FACT

### A. The financial condition's text did not require what the petition alleged

The Special Financial Condition imposed in 2016 and reimposed in 2023 required Morris to maintain a single bank account, deposit all income into it, disclose the account to Probation, and

provide "business records" to Probation "upon request." (Dkt. # 40, at 4; Dkt. # 75, at 5.) The condition does not by its terms require the contemporaneous disclosure of every account a defendant held before supervision commenced; it does not require disclosure of PayPal or Cash App platforms, which are not bank accounts; and it expressly limits the business-record obligation to instances where Probation makes a request. No request was made.

The government's Response asserted that the condition required Morris to disclose "all bank accounts." (Dkt. # 127, at 2.) That misquotation of the condition's text inflates its reach. A condition of supervised release is a court order; its meaning is fixed by its language, not by the probation office's preferred reading of it. The government cannot retroactively expand a court-imposed condition to encompass conduct the condition, as written, did not prohibit.

**B. Section 1001 does not apply to these facts**

Section 1001(a)(1) makes criminal the knowing and willful concealment of a material fact "by any trick, scheme, or device" in a matter within the jurisdiction of any branch or agency of the federal government. 18 U.S.C. § 1001(a)(1). The record raises substantial questions as to each element.

**Concealment by trick, scheme, or device.** The business-account transfer appeared as a line item on the Wells Fargo statement Morris handed to Probation. The PayPal and Cash App transactions appeared on the same statement. A fact that appears on the face of a document a defendant voluntarily produces is not a fact "concealed" by "trick, scheme, or device." The monthly report's handwritten annotation — "I am still working on status of old accounts" — and the officer's own notation that the report was "submitted as instructed" are affirmative evidence of disclosure, not concealment.

**Materiality.** A fact is "material" under § 1001 if it has the natural tendency to influence or is capable of influencing the government agency. Here, the information Probation asserted was "concealed" was either already on the submitted documents or concerned accounts for which no disclosure request had been made under the condition's own "upon request" clause. Where the transferred funds were already visible, no decision of Probation's could have been influenced by a concealment that did not exist.

**Knowing and willful conduct.** Morris's monthly report expressly qualified his certification "to the best of my knowledge" and disclosed he was still reconciling pre-supervision accounts. A statement qualified by its own terms as incomplete in a specific respect cannot be the predicate for a knowing and willful concealment of that same information.

**The judicial-function exception.** Section 1001(b) provides that the statute's prohibitions "do not apply to a party to a judicial or administrative proceeding . . . in which the falsification is reasonably related to that proceeding." 18 U.S.C. § 1001(b). Whether that exception covers statements to federal probation officers in the course of supervised release administration is a contested circuit question.[4] In this circuit, *United States v. Manning*, 526 F.3d 611, 620–21 (10th Cir. 2008), declined to apply the exception to a financial statement prepared during a presentence investigation. But *Manning* addressed an outright omission of a $40,000 asset from a document that disclosed nothing about it — facts directly opposite to those here, where the transferred funds appeared on the document Morris produced.

[4]The circuit split on the § 1001(b) judicial-function exception is genuine and unresolved in the Tenth Circuit as applied to monthly supervision reports. *Compare United States v. Manning*, 526 F.3d 611, 620–21 (10th Cir. 2008) (exception inapplicable to financial statement in PSR investigation), *with United States v. Horvath*, 492 F.3d 1075, 1077–78 (9th Cir. 2007) (exception applies where officer required by law to transmit statement to judge). Morris does not ask this Court to resolve the split; he establishes that the elements of § 1001(a)(1) are absent, rendering the exception question moot on these facts.

In 2009, the Tenth Circuit affirmed a § 1001 theory against Morris based on newly opened, undisclosed lines of credit and an undisclosed company — facts truly hidden from the documents he provided at the time. *United States v. Morris*, 313 F. App'x 125, 133 (10th Cir. 2009). That case is not this one: there, the concealed facts appeared nowhere in what Morris disclosed; here, the government's own exhibits show the relevant information on the face of Morris's submission.

**C. USSG § 7B1.1 grade, the statutory maximum, and the Grade B premise**

Under U.S.S.G. § 7B1.1(a)(2), a "Grade B" violation is one that constitutes a "federal, state, or local offense punishable by a term of imprisonment exceeding one year." Conduct that does not constitute such an offense is a Grade C violation — one that triggers the court's discretion to "revoke probation or supervised release" or, alternatively, to "extend the term . . . and/or modify the conditions," U.S.S.G. § 7B1.3(a)(2), rather than mandatory revocation.[5]

The Grade B classification drove every downstream consequence: the 8–14 month advisory range (versus 3–9 months for Grade C, CHC III), and the government's argument for a sentence up to the statutory maximum. Morris's bank fraud conviction carried a supervised-release maximum of 36 months per count under 18 U.S.C. § 3583(e)(3) for a Class B felony; the Court imposed 12 months per count running consecutively across 4 counts, aggregating to 48 months. The Grade B characterization directly shaped the advisory range and the Court's upward-variance analysis. Strip the § 1001 characterization — because the elements were absent on the facts — and the violation is at most Grade C. The entire 48-month structure collapses. That is the prejudice

[5] U.S.S.G. § 7B1.3(a)(2): "Upon a finding of a Grade C violation, the court may (A) revoke probation or supervised release; or (B) extend the term of probation or supervised release and/or modify the conditions of supervision." The court retains discretion for Grade C violations; it does not for Grade A or B. § 7B1.3(a)(1).

from the legally unsupported Grade B characterization: not merely a different number but a categorically different range and a categorically different discretionary posture for the Court.

## IV. THE PROBATION OFFICE BYPASSED THE GRADUATED-RESPONSE FRAMEWORK CONGRESS AND THE SENTENCING COMMISSION ESTABLISHED

Section 3601 places supervising probation officers under the direction of the court and charges them with supervision "to the degree warranted by the conditions specified by the sentencing court." 18 U.S.C. § 3601. Section 3603(2)–(3) imposes affirmative duties: to "instruct" the supervisee as to the conditions specified by the court and to "use all suitable methods, not inconsistent with the conditions specified by the court, to aid" the supervisee "and to bring about improvements in his conduct and condition." 18 U.S.C. § 3603(2)–(3). The statutory design reflects a graduated conception of supervision: the officer should aid before escalating to enforcement.

The Sentencing Commission's Chapter Seven policy structure reinforces this design. Section 7B1.2's commentary specifies that for Grade C violations, the probation officer must make "an affirmative determination that the alleged violation meets the criteria for non-reporting" before declining to report — and gives as an example that "an isolated failure to file a monthly report or a minor traffic infraction generally would not require reporting." U.S.S.G. § 7B1.2, cmt. n.1. The structure contemplates that the officer exercises judgment about proportionate response before escalating to the court.

The Administrative Office's own *Overview of Probation and Supervised Release Conditions* (2019), published for the benefit of all practitioners in the federal supervision system, describes the probation officer's statutory duty to "bring about improvements" in conduct and condition as a core obligation — not an aspiration. It notes that "conditions also assist in satisfying

the probation officer's statutory duty to keep informed of, report to the court about, and bring about improvements in the defendant's conduct and condition." AO, *Overview*, Ch. 1 (citing 18 U.S.C. § 3603). The AO's Probation and Pretrial Services Office conducted a study of fiscal year 2021 closures and found that among cases revoked purely for technical violations — with no accompanying arrest for a new crime — "about 5 percent . . . received an incarceration sentence of more than 6 months." AO PPSO Technical Violations Study (FY 2021) (available at www.uscourts.gov).[6] The inference is direct: in the overwhelming majority of technical-violation revocations, courts impose modest sanctions, not imprisonment measured in years. The probation office's enforcement strategy here — Fugitive Task Force arrest, Grade B characterization, and a 48-month sentencing memorandum — is a profound outlier from that normative practice.

No modification of conditions was proposed before the petition was filed. The business-account "upon request" mechanism was never invoked. No warning was issued. No increased reporting frequency was directed. The very tools the AO framework describes as "suitable methods" for bringing about improvements — all preconditions to the escalation of a reporting concern into a revocation petition — were bypassed entirely. That bypass, combined with the use of the Fugitive Task Force and the immediate § 1001 characterization, describes a probation response calibrated not to bring Morris into compliance but to return him to custody.

## V. AUSA WHIPPLE'S LEVERAGING OF THE § 1001 THREAT VIOLATED DOJ POLICY AND THE CONSTITUTION

### A. The Bondi Memorandum and the Justice Manual

[6]Administrative Office of the U.S. Courts, Probation and Pretrial Services Office, *Technical Violations of Supervised Release* (FY 2021 study) (available at uscourts.gov). The study found that "revocations resulting from solely technical violations — with no accompanying arrests for new crimes — accounted for 13 percent of all cases closed," and that "about 5 percent of cases closed in 2021 were revoked for technical violations and received an incarceration sentence of more than 6 months."

Effective February 5, 2025 — sixteen days before the revocation petition was filed — Attorney General Bondi issued the Department's general policy on charging, plea bargaining, and sentencing, directed to all Department employees and all United States Attorney's Offices. Att'y Gen. Bondi, *General Policy Regarding Charging, Plea Negotiations, and Sentencing* (Feb. 5, 2025) [hereinafter "Bondi Memo"]. Its operative text on plea bargaining is unequivocal:

> Prosecutors may not use criminal charges to exert leverage to induce a guilty plea. Nor may a prosecutor abandon pending charges to achieve a plea bargain that is inconsistent with the prosecutor's assessment of the seriousness of the defendant's conduct at the time the charges were filed.

Bondi Memo at 2. The memo reinstated the "most serious, readily provable offense" charging principle and expressly prohibited "animosity or careerism" in charging decisions. *Id.* at 1–2. Any deviation from the core principle required "approval by a United States Attorney or Assistant Attorney General" and written documentation of reasons. *Id.* at 2.[7]

The Justice Manual reinforces these standards. Before commencing prosecution, the prosecutor "should believe" the admissible evidence "will probably be sufficient to obtain and sustain a conviction" — a more-likely-than-not expectation of guilt beyond a reasonable doubt before an unbiased factfinder. J.M. § 9-27.220. The selection of charges must reflect "considerable care" and "an individualized assessment of all the facts and circumstances." J.M. § 9-27.300. Additional charges are to be brought only when they are "needed to ensure that the full extent of criminal conduct is reflected" or "significantly strengthen the government's case." J.M. § 9-

[7]The Bondi Memo carries its own non-enforceability footnote: it "is not intended to, does not, and may not be relied upon to create, any right or benefit, substantive or procedural, enforceable at law or in equity." Bondi Memo at 1 n.1. Morris does not invoke the memo as an independent cause of action. He invokes it (1) as the Department's own authoritative confirmation that this conduct is impermissible, relevant to the credibility of the government's revocation proceeding; and (2) as context for the Strickland analysis — specifically, that counsel who investigated the applicable law would have known the government's threat exceeded both the constitutional floor and its own agency's binding policy.

27.320. Sentencing recommendations must be based on "an individualized assessment of the nature and circumstances of the offense and the history and characteristics of the defendant." J.M. § 9-27.730.

**B. The constitutional framework: Bordenkircher and its limits**

The government will invoke *Bordenkircher v. Hayes*, 434 U.S. 357 (1978), for the proposition that a prosecutor may threaten additional charges during plea negotiations without violating due process. That precedent must be read precisely, because its limits are exactly the limits Morris's situation exceeds.

**What Bordenkircher held.** The Due Process Clause is not violated when a prosecutor "carries out a threat made during plea negotiations to have the accused reindicted on more serious charges "if he does not plead guilty to the offense with which he was originally charged," provided the defendant is "plainly subject to prosecution" on the threatened charges. 434 U.S. at 357, 365. The permissibility of the leverage in *Bordenkircher* rested on three conditions: (1) the defendant was fully informed of the threat from the outset; (2) he was free to accept or reject the offer; and (3) there was genuine probable cause for the threatened charge, such that the defendant was "plainly subject to prosecution." *Id.* at 364.

**What Bordenkircher did not authorize.** The *Bordenkircher* majority expressly premised its holding on the "give-and-take" character of plea bargaining in which there is "no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer." 434 U.S. at 363. It did not authorize threatening a charge whose elements the government's own evidence refutes, whose probable cause is undermined by the disclosures in the defendant's possession, or whose threatened prosecution would be barred by the Department's own charging policy. As the dissent in *Bordenkircher* observed — correctly, as a matter of principle —

"Prosecutorial vindictiveness in any context is still prosecutorial vindictiveness." 434 U.S. at 368 (Blackmun, J., dissenting).

The Court in *United States v. Goodwin*, 457 U.S. 368 (1982), recognized that presuming prosecutorial vindictiveness is appropriate where the facts show a realistic likelihood that the charging decision was made in retaliation for the exercise of a legal right. Here, the sequence is stark: Morris had a legal right under Fed. R. Crim. P. 32.1 to contest the petition's factual and legal sufficiency; the § 1001 threat was made in direct connection with whether he would exercise that right; and when the conditions supporting that right are examined — the documents Morris submitted showing the very information alleged to be concealed — the threat had no factual foundation.

**The Bondi Memo adds an independent prohibition.** Even if *Bordenkircher* would countenance a charging threat made with probable cause, the Bondi Memo — in effect when the petition was filed on February 21, 2025 — goes further than the constitutional floor. It prohibits using criminal charges to "exert leverage to induce a guilty plea" without qualification and without a probable-cause exception. Bondi Memo at 2. The DOJ's own authoritative judgment is that this conduct — whatever the constitutional minimum — is impermissible for federal prosecutors.[8]

**C. The stipulation was not voluntary**

A revocation admission must be the product of a knowing and voluntary choice. *See Brady v. United States*, 397 U.S. 742, 748 (1970). The governing framework is Fed. R. Crim. P. 32.1(b)(2), which requires that before any revocation admission is accepted the court ensure the

[8] J.M. § 9-27.150 similarly provides that the Justice Manual is internal guidance rather than a substantive right litigable by a defendant. Both sources are invoked here as evidence of the standard of conduct binding on the government's attorneys, relevant to the involuntariness of the stipulation and to the Strickland analysis, not as independent bases for relief.

person understands the consequences and that any waiver or admission is knowing and voluntary. The alternative Morris faced was not a free choice between contesting the petition and accepting its terms: it was a choice between a stipulation on terms the government dictated and a new felony prosecution whose elements the record does not support. A choice structured by a threat that exceeds what the record can sustain is not a knowing and voluntary exercise of rights.

Under *Mabry v. Johnson*, 467 U.S. 504, 508–09 (1984), a plea induced by a broken prosecutorial promise may be vacated on due process grounds. More broadly, due process requires that any admission or waiver in a revocation proceeding be the product of genuine choice, not of a threat whose factual basis is contradicted by the evidence the government possesses. Where the alleged concealment appeared on the face of the documents Morris submitted, the government lacked the factual foundation that alone can legitimize the pressure it applied.

Morris's sworn Declaration in support of the Amended Motion (Dkt. # 113) states that he did not believe the petition's allegations were accurate, that he understood the § 1001 threat to be a new criminal prosecution and not merely a revocation matter, and that he would not have entered an unqualified stipulation had he been properly advised of the weakness of the government's position — including the absence of any element of knowing and willful concealment by trick or scheme on the disclosed documents. (Dkt. # 113, Declaration ¶¶ 8–15.) No contradicting affidavit from Mr. Hilfiger has been filed, and the Response offers no contemporaneous record refuting the Declaration's factual allegations.

## VI. THE COMPLETE SEQUENCE SHOWS INSTITUTIONAL ANIMUS RATHER THAN LEGITIMATE ENFORCEMENT

Courts evaluating prosecutorial conduct look to the complete sequence of events — not individual decisions in isolation. *See Blackledge v. Perry*, 417 U.S. 21, 27–28 (1974) ("of course,

that a prosecutor exercises his charging authority in a completely legitimate manner might still not foreclose the likelihood of vindictiveness" if the circumstances show a realistic probability of retaliation). The sequence here is:

> Morris begins the new supervision term in December 2024. He reports to Probation. Within six weeks, he submits his monthly report qualified by hand-written notations of ongoing account-status work. Probation responds not by invoking the "upon request" mechanism in the financial condition, not by issuing a warning or directing increased reporting, not by proposing a condition modification — but by obtaining a sealed warrant and deploying the U.S. Marshals' Fugitive Task Force to arrest a nonviolent, 64-year-old supervisee who had previously self-surrendered on court order. At detention, the government characterizes the reporting matter as a § 1001 felony. Counsel does nothing. Morris stipulates under threat. The government argues for and obtains a sentence 3.4 times the guideline ceiling.

At the 2016 sentencing, this Court released Morris on bond and permitted him to self-surrender. Release after sentencing is available only where the Court finds "by clear and convincing evidence" that the person is not likely to flee or pose a danger. 18 U.S.C. § 3143(a)(1). That release necessarily embodied a judicial determination — on the same record the government now offers as proof of "significant danger" — that Morris posed no such danger. (Dkt. # 127, at 4.) The government cannot simultaneously argue that Morris posed a "significant danger" requiring a fugitive-task-force arrest and that the same historical record that this Court had already weighed under a demanding legal standard establishes that danger. The arrest method reveals the institutional posture; the legal standard already passed on the same record reveals the posture's inconsistency with the facts.

The Sentencing Commission's research on aging and recidivism confirms the broader picture. Offenders aged 65 and older are rearrested at a rate of 13.4 percent over an eight-year follow-up — against 67.6 percent for those under 21 — and recidivism "declined as age increased" across every measure. U.S. Sent'g Comm'n, *The Effects of Aging on Recidivism Among Federal Offenders* at 3 (Dec. 2017). Morris is 64. His last alleged criminal conduct dates to 2013. The

conduct alleged in the petition was a reporting irregularity, not a new fraud. The institutional response — task-force arrest, felony threat, 48-month sentence — is not proportionate to this defendant at this stage. It is the product of a disposition formed before the facts were tested.

## VII. APPLICATION TO THE § 2255 GROUNDS

The foregoing analysis integrates with and strengthens the grounds already pleaded in the Amended Motion. The connections are not cumulative; each ground is independently reinforced.

**Ground One (Ineffective Assistance — Strickland).** Under *Strickland v. Washington*, 466 U.S. 668, 690–91 (1984), and *United States v. Martin*, No. 24-3140 (10th Cir. Sept. 8, 2026) (published), counsel must conduct reasonable investigations, including research of relevant law, before advising a plea or stipulation. A minimally competent attorney who read the financial condition's "upon request" text, the monthly report's annotation, and Officer McClintock's "submitted as instructed" notation could not have advised an unqualified stipulation to Grade B. The further duty was to challenge the § 1001 characterization's elements — concealment, materiality, willfulness — on the face of the submitted documents, and to advise Morris that the government's threat exceeded what its evidence could support. Specific omissions include: (1) failure to obtain and analyze the complete financial condition and compare its text to the petition's allegations; (2) failure to investigate the elements of § 1001(a)(1) against the disclosed documents; (3) failure to advise Morris of the difference between a Grade B and Grade C violation and their respective advisory ranges; (4) failure to advise Morris of the maximum sentence the Court could impose and the guideline consequences of the Grade B premise; (5) failure to request a continuance after receiving the government's 56-month sentencing memorandum — the admission counsel made on the record (Dkt. # 107, at 6); and (6) failure to preserve objections for appeal. Neither

duty was discharged. *See* Dkt. # 107, at 6 (counsel admitting he "wasn't able to respond" to the government's sentencing memorandum because he "just didn't have the time to do it").

Prejudice is established: had Morris been properly advised, he would not have entered an unqualified Grade B stipulation. (Dkt. # 113, Declaration.) The entire 48-month structure — the Grade B range, the consecutive stacking, the variance — rests on that stipulation. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). And no affidavit from Mr. Hilfiger contradicts the Declaration's specific factual allegations; under *Martin* and *United States v. Aguayo-Montes*, 169 F.4th 1205, 1216–17 (10th Cir. 2026), the record does not "conclusively show" Morris is entitled to no relief, and a hearing is mandatory.

**Ground One (Ineffective Assistance — Garza/Roe v. Flores-Ortega).** The failure to file a requested notice of appeal is prejudice per se under *Garza v. Idaho*, 586 U.S. 232, 237, 245–47 (2019). The issues identified in this Supplement — the § 1001 element failures, the Grade B manufacture, the Bondi Memo violation, the involuntary stipulation — would all have been available on direct appeal. Counsel's failure to file when instructed deprived Morris of the ability to raise them before the Tenth Circuit.

**Ground Two (Esteras/Booker).** Section 3583(e) omits § 3553(a)(2)(A). *Esteras v. United States*, 606 U.S. 185, 203 (2025), and *United States v. Booker*, 63 F.4th 1254, 1261 (10th Cir. 2023) (binding circuit precedent at the time of sentencing). The Court's finding of "a lack of respect for the administration of justice" at sentencing (Dkt. # 107, at 13) invokes the forbidden retributive factor. But the sentencing context makes the violation worse: the Court was sentencing on a Grade B premise the government advanced through an inadequately investigated § 1001 characterization whose elements the record calls into serious doubt. Even within the permissible § 3583(e) factors, a sentence premised on Grade B findings that the record cannot support is

substantively unreasonable. *Gall v. United States*, 552 U.S. 38, 50 (2007) (major variance requires commensurately significant justification).

**Ground Four (Special Conditions).** The conditions argument is strengthened because the sentencing court, the government, and the probation office all proceeded on the legally disputed Grade B characterization the petition advanced. The conditions were imposed without the individualized § 3583(d) analysis *United States v. Bycroft*, 155 F.4th 1177 (10th Cir. 2025), requires, and the computer-restriction condition has no record nexus — a point *United States v. Bear*, 769 F.3d 1221, 1226 (10th Cir. 2014), and *United States v. Blair*, 933 F.3d 1271, 1277 (10th Cir. 2019), confirm cannot support a condition "in all but the most extreme cases." The legally disputed Grade B premise also inflated the sentencing posture in which those conditions were imposed, undermining any argument that the record otherwise supplied an individualized basis for them.

## VIII. CONCLUSION AND RELIEF REQUESTED

The February 2025 revocation proceeding was premised on a petition whose Grade B felony characterization was not supported by the elements of § 1001(a)(1) as applied to the disclosed documents; advanced by a threat that violated the Department of Justice's own charging policy, the Justice Manual's sustainable-conviction and individualized-assessment standards, and the constitutional limits of legitimate plea leverage; tolerated by appointed counsel who admitted on the record that he had no time to respond to the government's sentencing memorandum; and productive of a stipulation that was not voluntary because the alternative the government offered — a new felony prosecution on facts the evidence refutes — was not a lawful alternative.

Morris respectfully requests that the Court consider this Supplement in connection with the Amended Motion (Dkt. ## 113, 114), the pending Motion to Modify Conditions (Dkt. ## 112,

115), and the Reply (Dkt. # 128), and that it grant an evidentiary hearing as required by 28 U.S.C. § 2255(b) and directed by the Tenth Circuit in *Martin* and *Aguayo-Montes*. At the hearing, the record of the petition proceedings, Officer McClintock's testimony, and Mr. Hilfiger's testimony will confirm what the documents already reflect: that the Grade B characterization was advanced through a legally questionable threat that counsel did not contest, and that the 48-month sentence that resulted cannot stand.

Respectfully submitted,

Michael Chase Morris, Pro Se

Dated: September 16, 2026

**CERTIFICATE OF SERVICE**

I certify that on the date below I deposited a true and correct copy of the foregoing Second Supplemental Memorandum, first-class postage prepaid, addressed to the United States Attorney's Office, Northern District of Oklahoma, 110 West Seventh Street, Suite 300, Tulsa, OK 74119 (Attn: AUSA Thomas E. Duncombe), and I request that the Clerk also serve the United States through the Court's CM/ECF system upon docketing.

Michael Chase Morris, Pro Se
Dated: September 16, 2026

September 16, 2026

Clerk of Court
United States District Court
Northern District of Oklahoma
333 West Fourth Street, Room 411
Tulsa, Oklahoma 74103

**Re:** United States v. Michael Chase Morris, Case No. 15-CR-0115-001-CVE;
Morris v. United States, Civil No. 4:26-cv-00192-CVE-MTS
Second Supplemental Memorandum in Support of Amended § 2255 Motion
(Related to Dkt. ## 113, 114, 128)

Dear Clerk of Court:

I am the defendant and movant in the above-referenced matters and am appearing pro se. Enclosed for filing is the original of the following document:

> **Second Supplemental Memorandum in Support of the Amended Motion Under 28 U.S.C. § 2255 (Dkt. ## 113, 114) and Response to the Government's Opposition (Dkt. # 127).** This memorandum presents supplemental legal authority and factual argument in support of grounds already pleaded in the Amended § 2255 Motion (Dkt. # 113) and its Supplement (Dkt. # 114), and further develops the ineffective-assistance claims and related issues addressed in Morris's Reply (Dkt. # 128). It introduces no new grounds for relief. It addresses the characterization of the revocation violation as felony conduct under 18 U.S.C. § 1001(a)(1), the resulting Grade B classification that drove the 48-month sentence, the voluntariness of the stipulation under Fed. R. Crim. P. 32.1(b)(2), and the application of Department of Justice charging policy to the underlying proceedings.

**Paper filing.** This document is filed in paper form because, as a pro se party, I am not authorized to file electronically. See LGnR 2-1, Local Rules of the United States District Court for the Northern District of Oklahoma. The document complies with LCvR 5.2 (8½ × 11 inch paper, double-spaced text, 12-point Times New Roman font).

**Docketing instruction.** I respectfully request that the document be filed on the criminal docket, Case No. 15-CR-0115-001-CVE, with the related civil case, No. 4:26-cv-00192-CVE-MTS, noted, and that it be linked to the Amended § 2255 Motion (Dkt. # 113), its Supplement (Dkt. # 114), and the Reply (Dkt. # 128), to which it is directly related. The matter is assigned to the Honorable Claire V. Eagan, Senior United States District Judge.

**Request for delivery of a copy to chambers.** The Amended § 2255 Motion is fully briefed and currently under submission before Judge Eagan. A ruling may issue at any time. Accordingly, I respectfully request that, upon docketing, the Clerk deliver a copy of this Supplemental Memorandum directly to chambers so that it is available to the Court before any decision is made. I recognize that this request is outside the ordinary course, and I make it solely because of the

immediate significance of the supplemental authority and argument to the pending decision, not to burden the Court's staff.

**Service on the United States via CM/ECF.** Because I do not have access to the Court's CM/ECF system, I respectfully request that, upon docketing, the Clerk effect service of the enclosed document on the United States through the Notice of Electronic Filing generated by the Court's CM/ECF system, transmitted to counsel of record, including Assistant United States Attorney Thomas E. Duncombe, a registered CM/ECF participant. Service through the Court's electronic-filing system on a registered user is authorized by Fed. R. Crim. P. 49(a)(3)(A) and Fed. R. Civ. P. 5(b)(2)(E), as implemented through the Court's CM/ECF Administrative Guide adopted under the Local Rules. Out of an abundance of caution, I have also mailed a copy of the enclosed document to the United States Attorney's Office by first-class mail, postage prepaid, as reflected in the certificate of service accompanying the document.

**No filing fee.** This document is filed in the existing criminal case and the existing § 2255 proceeding; no filing fee is required.

Thank you for your assistance in filing this document, directing it to the correct case numbers, and bringing it to the attention of Judge Eagan's chambers. Please contact me at the address above if any additional information is needed.

Respectfully submitted,

Michael Chase Morris, Pro Se
Register No. 05990-062
Defendant/Movant

**Enclosure:** Second Supplemental Memorandum in Support of Amended § 2255 Motion (22 pages)

PRESS FIRM

PAPER POUCH how2recycle.info

UNITED STATES POSTAL SERVICE®

PRIORI
MAIL

- Expected delivery date specified for domestic use.
- Domestic shipments include $100 of insurance (restrictions apply).*
- USPS Tracking® service included for domestic and many international
- Limited international insurance.**
- When used internationally, a customs declaration form is required.

*Insurance does not cover certain items. For details regarding claims exclusions see the Domestic Mail Manual at *http://pe.usps.com*.
** See International Mail Manual at *http://pe.usps.com* for availability and limitations of cov

To schedule free P
scan the Q

USPS.COM/

**FLAT RATE ENVELOPE**
ONE RATE ■ ANY WEIGHT

**TRACKED ■ INSURED**

PS00001000014

EP14F October 2023
OD: 12 1/2 x 9 1/2

PAPER POUCH

This package is made from post-consumer waste. Please recycle - again.

UNITED STATES POSTAL SERVICE®

PirateShip.com®
Make shipping fun

**P**

usps.com
US POSTAGE
09/16/2026
1 lb 0 oz

U.S. POSTAGE PAID
USPS Ship

Mailed from 74104

Postmark 9/16/2026
15CR115-CVE-1
AN

**PRIORITY MAIL®**

Created 09/16/2026

MICHAEL MORRIS
1423 TERRACE DR STE 4156
TULSA OK 74104-4625

RECEIVED RDC 03

SEP 18 2026

Bonnie N. Hackler, Acting Clerk
U.S. DISTRICT COURT

U.S. DISTRICT COURT
COURT CLERK
333 W 4TH ST UNIT 411
TULSA OK 74101-5817

**USPS TRACKING # USPS Ship**

9305 5110 4390 0005 8698 66

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; October 2023; All rights reserved.